# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| DANIEL SCHWARZ,<br><br>  Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>  Acting Commissioner of Social Security,<br><br>  Defendant. | No. 17-CV-2030-LTS<br><br>**REPORT AND RECOMMENDATION** |

Plaintiff, Daniel Schwarz ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability and disability insurance benefits under Title II of the Social Security Act, as well as his application for supplemental security income under Title XVI of the Social Security Act. Claimant contends that the Administrative Law Judge ("ALJ") who heard his claim erred in determining that claimant was not disabled. For the reasons that follow, I recommend that the District Court **reverse and remand** the ALJ's decision for further proceedings consistent with this Report and Recommendation.

## *I.  BACKGROUND*

I adopt the facts as set forth in the parties' Joint Statement of Facts (Doc. 14) and therefore only summarize the pertinent facts here. ALJ Tom Andrews held a video hearing on September 8, 2016, and issued a decision finding claimant not disabled on November 21, 2016. (AR 22-33). [1] Claimant alleged disability beginning January 1,

---

[1] "AR" refers to the administrative record below.

1970. (AR 22). The Social Security Administration, however, determined that claimant had engaged in substantial gainful activity until July 15, 2002, and the ALJ determined that claimant had not been under a disability from the relevant date—July 15, 2002—through the date of the ALJ's decision.[2] (*Id.*).

The Commissioner asserts, and claimant does not contest, that claimant was born in 1960. (Doc. 17, at 3). Claimant completed ninth grade and attended tenth grade but did not pass. (Doc. 14, at 4). Claimant twice attempted to obtain a general equivalency diploma ("GED") but was unsuccessful both times. (*Id.*). At the hearing before the ALJ, claimant testified that the first time he attempted to pass the test to obtain his GED, claimant tested at the fifth grade level. (AR 48). Claimant testified that the second time he sat for the test, he tested at the third grade level. (*Id.*). Claimant further testified that he could read, but if "the words are difficult, [claimant doesn't] understand what they mean." (AR 48-49). Additionally, although claimant can add and subtract, he is not able to multiply and divide. (AR 49). At some point, claimant found report cards[3] from when he attended school and discovered that his teachers noted that learning was difficult for claimant. (*Id.*).

---

[2] The ALJ also found that claimant's date last insured was December 31, 2009, and that claimant was not under a disability through the date last insured. (AR 24, 32). Because the ALJ's decision was issued after the date last insured and thus encompasses both the date of the ALJ's decision and the claimant's date last insured, I will use July 15, 2002, through the date of the ALJ's decision as the relevant time period, for the sake of simplicity. Although it could be necessary to differentiate between a claimant's disability status as of the date last insured versus as of the date of an ALJ's opinion in certain cases, I find that this is not such as a case. As such, all conclusions I draw are applicable to the time period of July 15, 2002, through claimant's date last insured, as well as July 15, 2002, through the date of the ALJ's decision.

[3] Although the record contains what appear to be education reports, I am able to make out only two sets of education reports. (*See* AR 548-49, 555). The remaining education reports are not copied well enough for me to be able to read them. (*See* AR 529-33, 539-41).

On June 16, 2017, claimant timely filed the instant complaint in this Court. (Doc. 3). By January 23, 2018, the parties had fully briefed the issues. (Docs. 16-18). On May 21, 2018, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.　DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i) If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. *Id*. "Substantial" work activity involves physical or mental activities. *Id*. § 404.1572. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. *Id*.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id.* § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to

perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had engaged in substantial gainful activity after the alleged onset date. Specifically, the ALJ found that claimant had engaged in substantial gainful activity until July 15, 2002. (AR 22, 24). As such, the

ALJ modified the relevant time period to begin after the date on which claimant had last engaged in substantial gainful activity. (AR 22).

At Step Two, the ALJ found that claimant suffered from the following severe impairments: "degenerative disc disease; major depressive disorder; anxiety; borderline intellectual functioning/learning disability/adult attention deficit hyperactivity disorder; mild carpal tunnel syndrome for which he refused surgery; obesity; asthma; medically determinable left ankle impairment, status post old injury but with normal gait." (AR 24 (internal citations omitted)). The ALJ also discussed claimant's gastroesophageal reflux disease/acid reflux and hepatitis and explained why the ALJ found those impairments to be non-severe. (*Id.*).

At Step Three, the ALJ determined that "claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (AR 25). The ALJ specifically addressed Listings 12.02, 12.04, and 12.06 in conducting his analysis. (*Id.*).

At Step Four, the ALJ found that claimant had the RFC to perform medium work,

> except he can occasionally climb ladders, ropes or scaffolds. He can frequently climb ramps or stairs, stoop, kneel, crouch and balance. He can occasionally crawl. He can frequently perform handling and fingering bilaterally. He should avoid concentrated exposure to respiratory and pulmonary irritants. The claimant should have no more than occasional interaction with the general public, coworkers, and supervisors. He is able to understand, remember and carry out routine and repetitive tasks at no more than a regular pace with no fast paced production work pace.

(AR 26). Also at Step Four, the ALJ found that claimant could perform his past relevant work as a sanitation worker. (AR 31). Therefore, the ALJ concluded that claimant was not disabled. (AR 32). The ALJ proceeded, however, to Step Five.

6

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy claimant could still perform, including stocker and laundry worker. (AR 32).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence . . . ." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges that the ALJ failed to fully and fairly develop the record with respect to claimant's intelligence quotient ("IQ") and, therefore, the ALJ failed to consider whether claimant met or equaled Listing 12.05C. This failure to duly consider claimant's IQ and Listing 12.05C, claimant argues, prevents the ALJ's decision from being supported by substantial evidence on the record as a whole. Claimant further argues that the ALJ's RFC assessment is not supported by substantial medical evidence on the whole. I will first address claimant's argument regarding Listing 12.05C before turning to a discussion of the ALJ's RFC assessment.

## A. IQ and Listing 12.05

In the portion of the ALJ's decision addressing whether claimant had impairments or a combination of impairments that met or equaled the severity of a listed impairment, the ALJ stated, "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.02, 12.04, and 12.06." (AR 25). The ALJ did not discuss Listings 12.05 or 12.05C, nor did he address whether claimant's impairments were medically equal to Listings 12.05 or 12.05C. At the time of the ALJ's decision, Listing 12.05 provided:

> *Intellectual disability:* Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05. "[T]o meet Listing 12.05C, a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). "Adaptive functioning" refers to how a claimant learns and uses:

> conceptual, social, and practical skills in dealing with common life demands. It is [a claimant's] typical functioning at home and in the community, alone or among others. Under 12.05A, [the Commissioner] identif[ies] significant deficits in adaptive functioning based on [the

9

claimant's] dependence on others to care for . . . personal needs, such as eating and bathing.

POMS DI 34001.032H(3)(a).

Claimant concedes that he does not meet the requirements in Listing 12.05C, but argues that the ALJ improperly failed to make findings on whether the claimant's condition was medically *equivalent* to the listing. (Doc. 16, at 14). If a claimant's impairments do not meet the severity of the listed impairment, the ALJ must still determine whether the severity of those impairments are medically equivalent to the listed impairment. The medical equivalence regulation states:

> If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b)(3) (citation omitted). "Although POMS guidelines do not have legal force, and do not bind the Commissioner, [the Eighth Circuit Court of Appeals] has instructed that an ALJ should consider the POMS guidelines." *Hesseltine v. Colvin*, 800 F.3d 461, 465 (8th Cir. 2015) (citation and internal quotation marks omitted).

Here, the ALJ found that claimant had a verbal IQ score of 72, a performance IQ score of 76, a full-scale IQ score of 72, and overall borderline intellectual functioning. (AR 28). The ALJ also found that the Department of Corrections indicated that claimant had an estimated Beta IQ score of 78. (*Id.*). Claimant initially contended that the Beta IQ score was a second IQ score that was inconsistent with claimant's other IQ testing results and that the ALJ should have ordered a new IQ test to reconcile the inconsistent results. (Doc. 16, at 5). The Beta IQ score, however, was not the result of a true IQ test, as claimant ultimately concedes. (Doc. 18, at 1). As a result, the ALJ did not err

10

in failing to reconcile the scores. The remaining issue, then, is whether claimant's IQ test results, combined with claimant's other impairments, were such that the ALJ should have considered claimant's impairments within the context of Listing 12.05C. If so, the question will then become whether the ALJ's failure to do so was erroneous.

This case is similar to the Eighth Circuit Court of Appeals' decision in *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003). There, the Eighth Circuit Court of Appeals found that an ALJ erred when there was "no evidence that the ALJ considered the POMS guidelines" despite evidence that Shontos suffered from "marked disabilities that would interfere with her ability to work." *Shontos*, 328 F.3d at 424-25, 427. Shontos had a full scale IQ score of 72, placing her outside the range required by Listing 12.05C. *Id.* at 424. Nevertheless, she suffered from anxiety and depression to the extent that her treating medical professionals determined that her ability to perform work was severely limited. *Id.* at 422.

As in *Shontos*, the ALJ's decision in the instant case failed to sufficiently set forth the evidence that claimant's mental impairments, including his IQ, do not medically equal Listing 12.05C. Indeed, the ALJ ignored Listing 12.05C and failed to discuss at all whether claimant's limitations met or functionally equaled that listed impairment. This is error. *See Hughes v. Astrue*, 4:11cv1566 JCH TCM, 2013 WL 694962, at *17 (E.D. Mo. Jan. 31, 2013) (ALJ's failure to discuss claimant's earlier IQ scores, vocational counselors' observations, and opinions was error). In arguing that the ALJ did not err, the Commissioner argues only that claimant's IQ did not result in "significantly subaverage general intellectual functioning with deficits in adaptive functioning." (Doc. 17, at 10-13). The Commissioner argues that although claimant has an IQ of 72, claimant was still able to function at a high enough level to maintain employment for a number of years before applying for social security benefits. (*Id.*). The Commissioner's argument, then, is that even though claimant's impairments could otherwise equal Listing 12.05C,

claimant is not able to satisfy the preliminary component of Listing 12.05, which requires a claimant to show "deficits in adaptive functioning."

I recognize that claimant worked as a manual laborer for nearly thirty years. (AR 386). Such significant work history is highly probative of whether claimant actually experiences "deficits in adaptive functioning" due to his IQ. I, however, am not in a position to determine whether claimant does experience "deficits in adaptive functioning," simply because the ALJ failed to consider the issue and, thus, failed to develop the record as to this point. Because the ALJ entirely failed to develop the record on this issue, I cannot find that the ALJ's decision is supported by substantial evidence on the record as a whole.

The parties seem to be in relative agreement as to claimant's IQ. Further, neither party contests whether claimant has "a physical or other mental impairment imposing an additional and significant work-related limitation of function," within the meaning of Listing 12.05C. The only issue, then, within the context of Listing 12.05 is whether claimant's intellectual disability causes him to experience "significantly subaverage general intellectual functioning with deficits in adaptive functioning." Because the ALJ has not developed the record sufficiently for me to reach a conclusion as to this issue, I respectfully recommend that the Court **reverse and remand** the case with instructions to the ALJ to fully consider whether claimant suffers "significantly subaverage general intellectual functioning with deficits in adaptive functioning," within the meaning of Listing 12.05. The failure to consider the issue in a case such as this one is erroneous. Should the ALJ answer that question in the affirmative, I recommend that the District Court instruct the ALJ to consider whether claimant's impairments equal the severity of Listing 12.05C. To be clear, I am satisfied that the ALJ gave sufficient consideration to claimant's IQ and to claimant's "physical or other mental impairment[s] imposing . . . additional and significant work-related limitation of function." It is merely the

application of those impairments to Listing 12.05C that I find the ALJ should consider on remand.

### B. RFC Assessment

Claimant next argues that the ALJ's RFC assessment is flawed because it is not supported by medical evidence from a treating or examining source. (Doc. 16, at 21-23). Claimant argues that the ALJ's physical and mental RFC assessments are both flawed for this reason. (*Id.*). Claimant does not, however, contest any of the ALJ's factual findings. Rather, claimant argues that the ALJ's findings, while themselves factually correct, do not amount to substantial evidence on the record as a whole because they are not supported by medical evidence from a treating or examining source. This narrows the scope of my inquiry. I need not consider whether the ALJ's factual findings themselves are erroneous. Instead, I only need to look at the ALJ's factual findings and determine whether they amount to substantial evidence on the record as a whole.

Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004) ("It is true that we do not consider the opinions of non-examining, consulting physicians *standing alone* to be 'substantial evidence.'" (emphasis added)). The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination "do not normally constitute substantial evidence on the record as a whole." *Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) (internal quotation marks and citation omitted).

The ALJ found that claimant did not stop working because of his medical impairments, but instead stopped working so that he could care for his ailing father. (AR 28). Next, the ALJ turned to the medical records themselves, which showed that claimant was in overall good health. (AR 28, 563-67). The ALJ noted that claimant had no work,

sports, or housing restrictions while in the correctional system. (AR 28). The ALJ found claimant's July 2014 physical exam was largely negative/normal and those limitations that were assessed were based only on claimant's own reports and were not supported by any independent physical findings. (*Id.*). Electrodiagnostic testing in July 2014 showed mild bilateral carpal tunnel syndrome, but claimant's carpal tunnel "has not been disabling and has limited handling and gripping to no more than frequent, but not greater." (AR 28). This is consistent with the ALJ's limitation of "frequently perform[ing] handling and fingering bilaterally." (AR 26).

The ALJ further found that many of claimant's impairments—both physical and mental—improved with treatment, and the ALJ found evidence to suggest that claimant may not have pursued treatment as aggressively as possible. (AR 28-29). Despite being a routine smoker, claimant's lung fields were clear in July 2016. (*Id.*). Physical therapy was successful as to certain of claimant's physical impairments, and claimant helped his daughter move around the same time he completed physical therapy. (*Id.*). Finally, the ALJ relied on the opinions of a state agency medical consultant doctor in assessing claimant's physical RFC, and on the opinions of two state agency psychological consultants in assessing claimant's mental RFC. (AR 30).

I am satisfied that the ALJ's physical RFC assessment was supported by substantial evidence on the record as a whole. Although the ALJ did not rely on opinions from treating or examining sources in formulating claimant's RFC, the ALJ relied on claimant's medical records themselves and on the opinion of a consulting physician. In this case, the medical records themselves, in combination with the opinion of the consulting physician (AR 563-67), are enough that a reasonable mind might accept the ALJ's decision as true. *See Lewis*, 353 F.3d at 645. The ALJ did not rely on the opinions of the non-treating, non-examining consultant *alone*. Had he done so, perhaps my

conclusion as to this issue would be different. *See Harvey*, 368 F.3d at 1016. I therefore recommend that the District Court **affirm** the ALJ's physical RFC assessment.

I am unconvinced, however, that the ALJ sufficiently supported his mental RFC assessment. I have detailed my reasons for finding that the ALJ did not duly consider claimant's "deficits in adaptive functioning." The ALJ relied on some medical evidence, though scant, in addition to the opinions of two consultative examiners, in assessing claimant's mental RFC. This evidence was considered, however, without considering any "deficits in adaptive functioning" that claimant may have. Had the ALJ considered claimant's mental RFC against the backdrop of any potential "deficits in adaptive functioning" claimant may have, perhaps the ALJ would have reached a different conclusion. As such, I respectfully recommend that the Court **reverse and remand** the ALJ's decision with instructions to consider claimant's mental RFC after considering whether claimant experiences any "deficits in adaptive functioning." I recognize that should the ALJ find that claimant does not have any "deficits in adaptive functioning," it could be argued that if the ALJ's original mental RFC was supported by substantial evidence, there should be no reason for the ALJ to reconsider claimant's mental RFC. Here, however, the ALJ failed entirely to consider claimant's disability status under Listing 12.05. In failing to do so, the ALJ did not find it necessary to probe claimant's intellectual capabilities to the extent necessary.

Given this unique set of circumstances, I find that the ALJ should reconsider claimant's mental RFC following a thorough examination of claimant's intellectual capabilities. By doing so, the ALJ will be afforded the opportunity to assess any limitations found during the reexamination process against claimant's mental RFC, even if those limitations are not significant enough to amount to "deficits in adaptive functioning." Therefore, I recommend that the Court **reverse and remand** with instructions to reconsider claimant's mental RFC after considering whether claimant is

presumptively disabled under Listing 12.05. Of course, should the ALJ find that claimant is presumptively disabled under Listing 12.05, the ALJ may not wish to proceed to the next step, at which he or she would be required to conduct an RFC assessment. My recommendations should be construed as consistent with such findings.

## VI. CONCLUSION

For the reasons set forth herein, I respectfully recommend the District Court **reverse** the Commissioner's determination that claimant was not disabled, and **remand** the case for further proceedings.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 29th day of June, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa