# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| DANIEL SCHWARZ, | |
| Plaintiff, | No. C17-2030-LTS |
| vs. | **ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

## I.  INTRODUCTION

This case is before me on a Report & Recommendation (R&R) by the Honorable C.J. Williams, Chief United States Magistrate Judge. Doc. No. 21. Judge Williams recommends that I reverse the decision of the Commissioner of Social Security and remand this case with instructions pursuant to sentence four of 42 U.S.C. § 405(g). Neither party has objected to the R&R. The deadline for such objections has expired.

## II.  APPLICABLE STANDARDS

### A.  *Judicial Review of the Commissioner's Decision*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner . . . as to any fact,

---

[1] On March 6, 2018, the Government Accountability Office stated that as of November 17, 2017, Nancy Berryhill's status as Acting Commissioner violated the Federal Vacancies Reform Act (5 U.S.C. § 3346(a)(1)), which limits the time a position can be filled by an acting official. As of that date, therefore, she was not authorized to continue serving using the title of Acting Commissioner. As of November 17, 2017, Berryhill has been leading the agency from her position of record, Deputy Commissioner of Operations. For simplicity, I will continue to refer to the defendant as "the Commissioner" throughout this order.

if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). The Eighth Circuit explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

To determine whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court "must search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citation omitted).

To evaluate the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citation omitted), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citation omitted). Instead, if, after reviewing the evidence, the court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933,

935 (8th Cir. 2008)). This is true even if the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (citation omitted). The court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## B. *Review of Report and Recommendation*

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

3

*Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

### III. THE R&R

Schwarz alleged disability due to degenerative disc disease, major depressive disorder, anxiety, borderline intellectual functioning/learning disability/adult attention deficit hyperactivity disorder (ADHD), mild carpal tunnel syndrome, asthma and left ankle impairment. AR 24-25. The ALJ found that these impairments were severe but did not meet or equal the Listings of Impairments. AR 26. The ALJ expressly found that Schwarz's severe impairments did not meet or medically equal the criteria of Listings 12.02, 12.04, and 12.06. AR 25. However, the ALJ did not consider Listings 12.05 or 12.05C. *Id*.

After determining Schwarz's Residual Functional Capacity (RFC), the ALJ determined that he was capable of performing past relevant work as a sanitation worker, as well as capable of performing other work. AR 31-32. As a result, the ALJ found that Schwarz was not disabled. At issue is (1) whether the ALJ erred in failing to fully and fairly develop the record related to Schwarz's intelligent quotient (IQ) and, therefore, to consider Listings 12.05 and 12.05C, and (2) whether the ALJ's RFC assessment is supported by substantial evidence.

*A.*     *The Listings*

Judge Williams first considered whether the ALJ erred in failing to evaluate whether Schwarz was presumptively impaired under Listing 12.05C:

> Here, the ALJ found that claimant had a verbal IQ score of 72, a performance IQ score of 76, a full-scale IQ score of 72, and overall borderline intellectual functioning. (AR 28). The ALJ also found that the Department of Corrections indicated that claimant had an estimated Beta IQ score of 78. (*Id.*). Claimant initially contended that the Beta IQ score was a second IQ score that was inconsistent with claimant's other IQ testing results and that the ALJ should have ordered a new IQ test to reconcile the inconsistent results. (Doc. 16, at 5). The Beta IQ score, however, was not the result of a true IQ test, as claimant ultimately concedes. (Doc. 18, at 1). As a result, the ALJ did not err in failing to reconcile the scores. The remaining issue, then, is whether claimant's IQ test results, combined with claimant's other impairments, were such that the ALJ should have considered claimant's impairments within the context of Listing 12.05C. If so, the question will then become whether the ALJ's failure to do so was erroneous.
>
> This case is similar to the Eighth Circuit Court of Appeals' decision in *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003). There, the Eighth Circuit Court of Appeals found that an ALJ erred when there was "no evidence that the ALJ considered the POMS guidelines" despite evidence that Shontos suffered from "marked disabilities that would interfere with her ability to work." *Shontos*, 328 F.3d at 424-25, 427. Shontos had a full scale IQ score of 72, placing her outside the range required by Listing 12.05C. *Id.* Nevertheless, she suffered from anxiety and depression to the extent that her treating medical professionals determined that her ability to perform work was severely limited. *Id.* at 422.
>
> As in *Shontos*, the ALJ's decision in the instant case failed to sufficiently set forth the evidence that claimant's mental impairments, including his IQ, do not medically equal Listing 12.05C. Indeed, the ALJ ignored Listing 12.05C and failed to discuss at all whether claimant's limitations met or functionally equaled that listed impairment. This is error. *See Hughes v. Astrue*, 4:11cv1566 JSCH TCM, 2013 WL 694962, at *17 (E.D. Mo. Jan. 31, 2013) (ALJ's failure to discuss claimant's earlier IQ scores, vocational counselors' observations, and opinions was error). In arguing that the ALJ did not err, the Commissioner argues only that

> claimant's IQ did not result in "significantly subaverage general intellectual functioning with deficits in adaptive functioning." (Doc. 17, at 10-13). The Commissioner argues that although claimant has an IQ of 72, claimant was still able to function at a high enough level to maintain employment for a number of years before applying for social security benefits. (*Id.*). The commissioner's argument, then, is that even though claimant's impairments could otherwise equal Listing 12.05C, claimant is not able to satisfy the preliminary component of Listing 12.05, which requires a claimant to show "deficits in adaptive functioning."
>
> I recognize that claimant worked as a manual laborer for nearly thirty years. (AR 386). Such significant work history is highly probative of whether claimant actually experiences "deficits in adaptive functioning" due to his IQ. I, however, am not in a position to determine whether claimant does experience "deficits in adaptive functioning," simply because the ALJ failed to consider the issue and, thus, failed to develop the record as to this point. Because the ALJ entirely failed to develop the record in this issue, I cannot find that the ALJ's decision is supported by substantial evidence on the record as a whole.
>
> The parties seem to be in relative agreement as to claimant's IQ. Further, neither party contests whether claimant has "a physical or other mental impairment imposing an additional and significant work-related limitation of function," within the meaning of Listing 12.05C. The only issue, then, within the context of Listing 12.05 is whether claimant's intellectual disability causes him to experience "significantly subaverage general intellectual functioning with deficits in adaptive functioning."

Doc. No. 21 at 10-12. Concluding that the record was not sufficiently developed to permit a finding as to whether Schwarz experiences significantly subaverage general intellectual functioning or deficits in adaptive reasoning, Judge Williams recommended remand with instructions to further develop the record. *Id.* at 12.

**B.**   *The RFC*

Judge Williams next considered whether the ALJ's RFC was supported by substantial evidence on the record as a whole. Regarding Schwarz's physical RFC, Judge

6

Williams found that the ALJ's opinion was properly supported, despite the fact that the record contains no treating or examining source opinion:

> I am satisfied that the ALJ's physical RFC assessment was supported by substantial evidence on the record as a whole. Although the ALJ did not rely on opinions from treating or examining source in formulating claimant's RFC, the ALJ relied on claimant's medical records themselves and on the opinion of a consulting physician. In this case, the medical records themselves, in combination with the opinion of the consulting physician (AR 563-67), are enough that a reasonable mind might accept the ALJ's decisions as true. *See Lewis*, 353 F.3d at 645. The ALJ did not rely on the opinions of the non-treating, non-examining consultant *alone*. Had he done so, perhaps my conclusions as to this issue would be different. *See Harvey*, 368 F.3d at 1016. I therefore recommend that the District Court **affirm** the ALJ's physical RFC assessment.

Doc. No. 21 at 14-15.

Turning to the ALJ's mental RFC assessment, Judge Williams concluded that the ALJ's failure to consider Schwarz's "deficits in adaptive reasoning" precluded a finding that the mental RFC was supported by substantial evidence. Judge Williams recommended the following instructions on remand:

> [T]he ALJ [should] consider claimant's mental RFC after considering whether claimant experiences any "deficits in adaptive functioning." I recognize that should the ALJ find that claimant does not have any "deficits in adaptive functioning," it could be argued that if the ALJ's original mental RFC was supported by substantial evidence, there should be no reason for the ALJ to reconsider claimant's mental RFC. Here, however, the ALJ failed entirely to consider claimant's disability status under Listing 12.05. In failing to do so, the ALJ did not find it necessary to probe claimant's intellectual capabilities to the extent necessary.
>
> Given this unique set of circumstances, I find that the ALJ should reconsider claimant's mental RFC following a thorough examination of claimant's intellectual capabilities. By doing so, the ALJ will be afforded the opportunity to assess any limitations found during the reexamination process against claimant's mental RFC, even if those limitations are not significant enough to amount to "deficits in adaptive functioning." Therefore, I recommend that the Court **reverse and remand** with

> instructions to reconsider claimant's mental RFC after considering whether claimant is presumptively disabled under Listing 12.05. Of course, should the ALJ find that claimant is presumptively disabled under Listing 12.05, the ALJ may not wish to proceed to the next step, at which he or she would be required to conduct an RFC assessment. My recommendations should be construed as consistent with such findings.

Doc. No. 21 at 15-16.

## IV. ANALYSIS

Because neither party objected to the R&R, my review is for clear error. Upon review of the record, I concur with Judge Williams' findings and recommendations. Specifically, I find that the ALJ erred in failing to evaluate whether Schwarz met the criteria for Listing 12.05C and that the ALJ should reconsider Schwarz's mental RFC in light of that evaluation. I further agree that Schwarz's physical RFC was supported by substantial evidence. As such, I accept Judge Williams' R&R in its entirety.

## V. CONCLUSION

For the reasons set forth herein:

1. I **accept** the Report and Recommendation (Doc. No. 21) without modification.

2. The Commissioner's determination that Schwarz was not disabled is **reversed** and this case is **remanded** to the Commissioner for further proceedings consistent with this order and the Report and Recommendation.

3. Judgment shall enter in favor of the plaintiff and against the defendant.

**IT IS SO ORDERED.**

**DATED** this 18th day of July, 2018.

                                                                                                     Leonard T. Strand, Chief Judge